Good morning, Your Honors, and may it please the Court, my name is Joel Hanson and I represent the appellant, Joel Johnson. I would like to reserve three minutes for my rebuttal, so please remind me when I reach that time. Mr. Johnson alleges that the defendant, Freddie Mac, purchased his mortgage and became his lender. As the lender, Freddie Mac was obligated to pay his insurance premium using funds that existed in an escrow account. That part I don't get. I don't see why they assumed the obligation to perform that service of paying the premium as opposed to the loan servicer. Well, because the contract does not contemplate a loan servicer. The contract only contemplates a lender. So when Freddie Mac, the deed of trust mortgage contract that is the security instrument. I think the deed of trust did contemplate a servicer and the separation of duties. I don't believe that. I could be mistaken. That was not as part of the allegations in the complaint. And this is a case that was dismissed under Rule 12b-6 for failure to state a claim. And so all of the allegations in Mr. Johnson's complaint must be taken as truthful and accurate. So to have a dispute over that. Here's what I was thinking of. Wasn't the deed of trust, was it attached to the complaint as an exhibit or something? It was in briefing subsequent. Yeah, I think it was included. It has this provision 20 that says, if the note is sold and thereafter the loan is serviced by a loan servicer other than the purchaser of the note, the mortgage loan servicing obligations to borrow will remain with the loan servicer or be transferred to a successor loan servicer and are not assumed by the note purchaser unless otherwise provided by the note purchaser. Translating that into the facts of this case, it sounds like it says if Johnson's promissory note is sold to Federal Home Loan Mortgage Corporation and is serviced by a loan servicer other than the Federal Home Loan Mortgage Association, then the servicing obligations to the borrower, such as paying the taxes and insurance, will remain with the loan servicer or be transferred to a successor loan servicer and are not assumed by the note purchaser. That would be Federal Home Loan Mortgage. That's what's hanging me up here. In the deed of trust contract, it's the lender that has the right to obtain those escrow funds and then has the obligation of paying those escrow funds. It's the lender throughout the contract that has these responsibilities. I don't think Federal Home Loan Mortgage was the lender. I thought they bought the note from the lender. Well, and I think that's one of the questions here. That's why the section refers to purchaser of the note. And there's a question of whether a party can purchase part of the contract that it wants and disavow the sections of the contract it does not want. Usually the whole idea of a negotiable instrument is you can purchase the note and all the other stuff isn't your problem, and that's what makes them negotiable. There was no authority cited for that by the appellee in this case, so I'm not prepared to argue that issue. I thought it was just kind of first class in bills and notes. The reason that the district court dismissed this case was on the basis of the Merrill Doctrine and applying a very broad interpretation of the Merrill Doctrine that no appellate court has yet applied, and applied an opinion of a district court, Pavlosky v. Standard Mortgage Incorporated, where the trial court decided that the Merrill Doctrine actually allowed Freddie Mac to disavow unauthorized conduct of its agent, and that is not something that the Merrill Doctrine stands for. What the Merrill Doctrine stands for is that a government entity that is wrongfully brought into a contract by one of its agents without authority. The district court may have decided on the basis of the Merrill Doctrine, and if we assume for purposes of discussion that the district court erred in that, nevertheless, if Freddie Mac didn't assume the servicing obligation, I don't see why we even have to decide anything about the Merrill Doctrine. Because that's a question of fact, and to have an after-the-fact debate on the terms of the contract is not an appropriate means of reviewing a decision that was made on it. I don't know why you'd never get to a jury on whether the contract does or does not say if the note is sold thereafter and thereafter the loan is serviced and the rest of that language that I read to you. I guess it's right there in the deed of trust. Well, because if that was the path that the trial court had followed, that would have allowed plaintiffs to then sue. But what do we care? We reviewed de novo. What do we care what path they followed? Well, it would have allowed plaintiffs to argue that issue based on the evidence and based on the testimony of Freddie Mac as to what rights they do or do not assume. Okay, thanks. Appellant contends that under Rule 12b-6, this court should make a determinant based on the allegations in the complaint rather than the very limited evidence that was submitted on the record. And the decision by the district court expanded the Merrill Doctrine in a way that is not consistent with this court's ruling in Packard, Incorporated versus the United States, where this court said essentially that if where a government makes assurances to a service provider in order to secure the desired performance, that government entity is then bound by those assurances. So when a government entity enters into a contract, it cannot later disavow those obligations. And if a government entity purchases the assignment of a contract, it steps into the shoes of the assignor and it cannot disavow the obligations of that assignor. Isn't this a mere assinor-assinee relationship? Isn't that the basis upon which we should make the determination? I believe so, Your Honor. I believe that the allegation in the complaint is that Freddie Mac assumed the or assumed assignment of the loan, and as a result it steps into the shoes of the lender. But what do we do then with our case of United States versus Thompson? Merely as an assinee, one does not become affirmatively liable for a deficit in the accounts between the assignor and another party to the assigned contract. There is no, when you assign it, the assinee does not take the duties and responsibilities according to Thompson. What do we do with that case? I don't think that Thompson says precisely that you don't take the rights and obligations. I just read it to you. It says merely as an assinee, one does not become affirmatively liable for a deficit in the accounts between the assignor and any other party to the assigned contract. And we're not arguing that the disparity in accounts prior to the assignment were taken by Freddie Mac. We're just arguing that when Freddie Mac took assignment, it took both the rights and obligations. I believe that the statement that you read refers to liabilities that exist from failures to perform duties. So, for example, if a party prior to assignment had breached a contract or owed money to the other party of the contract and then another entity were to take assignment of that contract, the debts from those breaches and failures to pay, those would not be transferred. Sure, but Thompson goes on to have that. If there's an affirmative assumption, but there's no affirmative assumption in the assignor-assinee contract in this case that I saw, affirmative means something stated, not theory. So I don't know how you get around Thompson. Can you remind me what jurisdiction Thompson is in? Yes, it's the Ninth Circuit Court of Appeals. Well, I'm not sure if it was in Washington. In Washington, the case that appellant cited was Powis v. Fowler, which is a Washington Supreme Court decision decided in 1961 that clearly said that when a party is assigned a contract, it stands in the shoes of the assignor. And this is a case that should be decided under Washington law because it is in regards to a Washington deed of trust for a piece of property in Washington. And Mr. Johnson was a Washington resident when he entered into this agreement. So under Washington law, it is clear that the assignor or the assignee does step into the shoes of the assignor when they receive assignment. You know, that step into the shoes language, as I recall that case, it was to take advantage of what the assignor had been entitled to. And here, what you have is a more specific provision. You have a note. That's a promise to pay. It says, I promise to pay, looks like $192,500, a little hard for me to read, to the lender. And the lender is Taylor Bean and Whittaker Mortgage Corporation. And then I have this language in the deed of trust that says if the note, that's the promise to pay Taylor Bean and Whittaker, is sold, the servicing obligations remain with the loan servicer and are not assumed by the note purchaser. So you seem to have a specific agreement between the parties in the deed of trust that the purchaser of the note, Federal Home Loan Mortgage Corporation, does not assume the loan servicing obligations, even if in the absence of any agreement it would, which I don't think is necessarily supported by the authority you cited. But even if it were, I don't see why that default rule would not be overcome by the party's agreement that the buyer of the note, Federal Home Loan Mortgage, would not assume the servicing obligations. Well, Your Honor, if this court does remand this case to the trial court, it may be that Freddie Mac can win pursuant to that language in the contract. But that is not what was at issue under the 12B6 motion that this case was dismissed under. The thing is we've got this rule that says we can affirm on any ground supported by the record. And I think it may be that you can rule that way. I think your argument on Merrill is strong. That's why I'm asking these non-Merrill questions. It looks to me like Merrill's about estoppel, and I question whether there's any estoppel issue to be discussed in this case. So I'm looking at this alternative issue. And with the rule that we can affirm on any ground supported by the record, I don't see how we avoid this one. It's so plain in the deed of trust. Well, and, Your Honor, I don't have the deed of trust in front of me, and so I'm not prepared to argue this issue that was never raised in the trial court. So it's difficult for me to do so. Let me ask. Go ahead. You turn my attention to Washington law. There is a case, Donald B. Murphy, Contractors. It says, quote, A third-party beneficiary contract exists only when the contracting parties intend to create one, close quote, as evidenced by, quote, whether performance under the contract would necessarily and directly benefit the third party, close quote. Well, the services guide is designed not for the benefit of Bowers, but the benefit of Freddie Mac and approved mortgage lenders, service home managers. So I'm not as sure as you are that the Washington law, assuming we found that Washington law applied. Well, we're not arguing the contents of the servicer contract. We're arguing about Mr. Johnson's contract with the lender and who is the lender. And it may be that Freddie Mac could make the argument that it is not the lender under the law or under its contractual, some contractual relationship. But Freddie Mac has accepted 100. It can make the argument and win it that it's not the lender because the promissory note says the lender is, and then that company that I read you the name of. And it looks like the district court did discuss this. It says when Freddie Mac purchases a home loan on the secondary market, it does not assume responsibility for servicing the loan. And I'm reading there from the district court decision. Well, there was a point during the trial case where we actually moved to amend the complaint to make the argument that if Freddie Mac was not the lender, it was not appropriate for it to have accepted this $186,000 to pay off the loan. And the trial court refused that amendment on the basis that, of course, Freddie Mac was the lender for the purposes of the contract. So that kind of set that matter to rest at the trial court level. And we can revisit that if it turns out to be that Freddie Mac was not, in fact, the lender. But then there may be an argument that Mr. Johnson has that he should not have been required to pay them the $186,000 that he paid them to resolve his debt. Counsel, I'm sorry. Your time is up. I will give you two minutes for rebuttal so you can make argument in light of what your opponent says. Thank you, Your Honor. Now, for the appellee, we have Mr. Stephen Lincoln. And Mr. Lincoln, I'm going to apologize. I thought we were all ready to go when I started the appellant's argument. Then I noticed that maybe the last counsel hadn't exited the table. So we held you up a bit. Oh, not a problem. I heard the whole thing. Thank you very much. If it pleases the court, my name is Steve Lincoln, L-I-N-K-O-N. I'm appearing for the Federal Home Loan Mortgage Corporation or Freddie Mac. The court seized on the precise language of the deed of trust, the mortgage contract, that in my mind resolves the dispute, and that is paragraph 20 of the deed of trust. What Johnson is saying is that when Freddie Mac purchases the loan, they automatically assume all obligations of the lender when they do that. But the deed of trust says otherwise. And paragraph 20 has the sale of note provision. It says the note can be sold without notice to the borrower. And this paragraph provision also talks about there being a servicer. It says the sale might result in a change of the entity known as the loan servicer, and then it describes what the loan servicer does. They collect the payments under the note and perform other mortgage loan servicing obligations under the note, the deed of trust, and applicable law. The provision says if the note is sold and thereafter the loan is serviced by a loan servicer other than the purchaser of the note, and that's what we have here, Taylor Bean kept the servicing the whole time. In that case, the obligations of the loan servicer are not assumed by the note purchaser. They remain with the loan servicer, and that was Taylor Bean from the beginning until they were replaced by Senlar. So there isn't any automatic assumption of the servicing obligations. And by contract, Johnson agreed that the note purchaser, whoever they may be, would not assume those servicing obligations, and it's clear from their complaint that whatever harm they suffered was as a result of what Taylor Bean, the servicer, did. Now, I notice that their claim is, well, Taylor Bean forgot to pay the insurance premium, but they paid some other insurance premium. They paid the premiums for the Mount Vernon Company, and when there was a loss, those carriers, Mount Vernon and Safeco, paid the claim. It doesn't really matter, does it? It doesn't matter because none of this is free. Even if Taylor Bean had just been a bunch of crooks and they had just stolen the money instead of using it to pay for the insurance and taxes, it still wouldn't matter. I think your argument is that under Section 20 that's not Freddie Mac's problem. That's exactly right. I don't want to seem harsh about this. I mean, he did get the claim paid. I'm not talking about your feelings or mine. I'm just talking about what the law would be on it. But that's the outcome. And, you know, the court was saying I'm not... Do we have to reach Merrill? I really didn't understand why Merrill was of any help to Freddie Mac here. Other than... To me, like an estoppel was even an issue. Well, the case, the district court sided to that California case. They sided to Cannon v. Wells Fargo. And that involved Fannie Mae. And same deal there. There was... Not an important distinction between Fannie Mae and Freddie Mac here. My question is does the law of Merrill have anything to do with this case? Well, they applied Merrill in that California Wells Fargo case. And Wells Fargo was the servicer. There was a problem with this insurance. They said the first place insurance was improper. Wells Fargo was getting kickbacks. But they sued Fannie Mae. And what the California case said was, well, the Merrill doctrine protects Fannie Mae. And they actually cited a lot of different cases. It would if there were an allegation of an estoppel of the sort that it protects the government against. The basic rule is the government can't be estopped by the false statements of its agents. And that's what Merrill arises out of. Unless I'm just recalling this wrong. I mean, he's saying the same thing. He's saying that Freddie Mac, this servicer, Taylor Bean, was Freddie Mac's agent. They became Freddie Mac's agent when Freddie Mac... Well, no, it's not the same thing. If he said, well, I called the Federal Home Loan Mortgage Association and asked them what's the deal now. There's some new loan servicer here. And they told him, don't worry, we've checked. All your fire insurance premiums are paid. The new servicer is paying them. The old servicer paid them. Everything's up to date. Then you'd have a Merrill issue. You're saying if he dealt directly with the federal agency. If there was a false statement upon which he relied or sought to estop the government from... Yeah, I don't think in that California case, the Cannon versus Wells Fargo, that there was any issue. Those kind of facts were the borrowers were dealing with Fannie Mae at all either. So I think that's why if you look at that Cannon case, arguably Merrill applies. I'm not wedded to Merrill at all. I agree. Let's just go with the terms of the contract that the borrower signed. Paragraph 20 precludes the claims that he's making here. A number of his claims were dismissed by the district court. The declaratory relief claim, the negligence claim, the Washington Consumer Protection Act claim, the RESPA claim. He doesn't challenge the dismissal of those at all. He's focusing solely on the contract claim and the fiduciary duty claim. There's no fiduciary duty here. The general rule in Washington is that the lender is not a fiduciary of the borrower unless there's a special relationship that exists between the two. He doesn't allege that there was ever a special relationship. You understand my concern about Merrill is there the farmer said that he'd been misled by the government's agent into planting some kind of crop that wouldn't be covered by the crop insurance or something of that nature. If you go back to the Merrill case, what plaintiff's arguing is it's a lot narrower. The actual Merrill case is a lot narrower than what we're dealing with now decades later. He's absolutely right. In fact, the Cannon case actually discusses that point, that the Merrill doctrine over the decades has been dramatically expanded from what that original case appears to stand for. The dramatic expansion to today makes it appear that any government entity is protected from the negligence or unauthorized conduct of any party purporting to act on its behalf. That's the broad... It's generally hard to stop the government. Now, the way Merrill has evolved, yes. The only two claims left are the contract claim and the fiduciary duty claim. I think that certainly that Paragraph 20 of the Deed of Trust eliminates those claims. I'll just briefly address the fiduciary duty claim. The general rule is the lender's not a fiduciary. So what Johnson's arguing is they use this language, it's an escrow account. But it's really not an escrow. That's a label that they put on those. They say that the money that the borrower pays that are collected for taxes and insurance, they call that an escrow. That's just a label. It's not an escrow under Washington law. Washington law describes an escrow, RCW. Oh, it isn't an escrow? I thought in most states it was treated as an escrow because the bank didn't own it outright. It owned it subject to a fiduciary obligation to apply it to the insurance and taxes. If we look at it that way, then we get to the escrow. But what Washington law says is an escrow is a third party gets money and they're supposed to deal with that money according to their instructions. So their fiduciary duty is to honor their instructions. Well, who's the third party here? It was Taylor Bean. Taylor Bean's the party that got the money. Taylor Bean had the instructions as to what to do with it, both under the Deed of Trust and under the Seller Service or Guide. I don't know if that matters there. A third party in the sense that they're not the promisor on the note and they're not the promisee on the note? I'm not sure. They're a third party to the note. But it's Taylor Bean. It's not Freddie Mac. Freddie Mac is not. So Taylor Bean is a third. Once the note is sold to Freddie Mac, Taylor Bean becomes a third party on the note. And under that view, then that's the escrow. They're the escrow holder. They have the obligations. They breach them. That's his claim. That's where the claim should have been made. That's the case. So you don't need the argument that they're not a true escrow? I don't need it, no. I didn't understand why you were making it. I'm trying to eliminate the fiduciary duty, the breach of fiduciary duty. I think Taylor Bean or its subsequent servicer did have a fiduciary duty to apply the money to the taxes and insurance. But as I understand it, you don't represent them and it doesn't matter. It doesn't matter. So the district court was correct. The case was properly dismissed. And the court should affirm that decision. Thank you, Mr. Lincoln. We have your argument in mind and the case is well briefed. Your Honor, now that I've had a moment to think about your question concerning the contents of the deed of trust contract, this is actually something that has been addressed, or at least analogously in Washington, where the Washington Supreme Court has dealt with deed of trust agreements that were claimed to have these multiple parties and more than just the lender, but also to have, in one case, something called the Mortgage Electronic Registration System was also a party. And the name of this case is Bain versus Metro Mortgage Group Incorporated and it's 175 Washington 2nd 83. And on pages 92 to 93, the Washington Supreme Court discusses how a deed of trust mortgage is a three-party transaction and that transaction involves the grantor, who is the borrower, and that grantor gives the note to the trustee, who holds it in trust, for the beneficiary, who is the lender. And you cannot have a fourth party to that transaction. They said that the way that Washington statutes are, you can't split up the deed of trust to have other rights and obligations held by other parties. And this case is an example of how confusing it can become when you try and separate out rights and obligations, instead of having just a simple lender-borrower relationship. Because Mr. Johnson is in this very difficult position now where his lender says, well, we didn't have the responsibilities to actually perform the contract. And that creates a bit of a mess. And that's why the Bain court said you only get these three parties. You can't go beyond that. And I would also like to add on the Merrill issue, that I disagree that Merrill has been significantly expanded. This court reviewed Merrill and reaffirmed it. I don't get why Merrill even comes into it. I don't either. It's an attempt to expand it beyond its parameters. I mean, Merrill didn't say that the government couldn't be liable for anything, no matter what. All it said was that it couldn't be liable because its agent told the farmer he'd get the money if he planted a certain crop and the agent was mistaken. And he still didn't get the money. Right. And under Freddie Mac's theory, Merrill would allow any government agent to disavow or any government entity to disavow. Disavow what its agents say and isn't stopped by what its agents say. We didn't authorize you to commit negligence, essentially. I don't see why that matters here because I don't see any claim by Mr. Johnson that the government told him something that turned out not to be so. No, no. Mr. Johnson's claim is that Freddie Mac knowingly entered into the lender agreement. Thank you, Ron. Okay, thank you. We appreciate the fine arguments of counsel on both sides. Johnson v. Federal Home Loan Mortgage Corporation shall be submitted.
judges: Wallace, Kleinfeld and Gould